UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| JAMES E. WILLOUGHBY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:08-cv-51-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 12, 13].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.   **OVERVIEW OF THE PROCESS**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

>  1.   An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

>  2.   An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

physical or mental ability to do basic work activities is not disabled.

3.   If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.   If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work.  If the claimant is able to continue to do this previous work, then he is not disabled.

5.   If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work.  If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.*  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

## II.   STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by

2

substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**III. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed for disability benefits September 9, 2004, alleging an onset of disability of March 15, 2004, due to arthritis, back pain, and mild mental retardation. [Administrative Record (hereinafter, "AR") at 54, 66, 71, 198-206.] Plaintiff's application was denied upon his initial application and upon reconsideration. [AR at 38-41, 44-46.] Upon Plaintiff's request, a hearing on his application was conducted on March 9, 2006, and his application was subsequently denied by Administrative Law Judge ("ALJ") Timothy G. Keller on June 21, 2006. [AR at 16-25, 47-48, 239-55.] Plaintiff timely pursued and exhausted his administrative and judicial remedies, and this matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42 U.S.C. § 405(g). [*See* AR at 8-15.]

Plaintiff was fifty-nine-years-old at the time of the final decision by the ALJ. [AR at 23.] He has a eighth grade education

3

and past work experience as a band saw operator in a steel factory.
[AR at 72.]

The bulk of the medical evidence contained in the
administrative record is comprised of the reports of the
Administration's own consultative examiner, Dr. James Owen, and
consultative psychologist, Dr. Dennis Sprague. The administrative
record also includes notes from office visits with Jeffrey
Brumfield, M.D., at Clark Internal Medicine, P.S.C., and lab
reports associated with his treatment there. [AR at 120-149.]
These notes, which date from December 13, 2000, through October 17,
2003, indicate that he was assessed with and sought treatment for
a variety of ailments, including peptic ulcer disease, hemorrhoids,
mild dyslipidemia, and mild osteopenia, as well as for routine
health maintenance issues. Of note, on November 2, 2001, he
reported "a little arthritic pain in his back." [AR at 127.] The
notes also remark on the existence of his "old L1 compression
fracture.". [AR at 120, 122-23, 128-29.]

The record also includes the reports and findings of agency
examiners and consultants. Among them, the agency consultative
examiner, Dr. Owen, observed that Plaintiff's lumbar flexion was
70° with more pain on extension at 20°. [AR at 152.] Upon
reviewing x-ray films, Dr. Owens reported that Plaintiff's lumbar
spine when viewed on the anterior/posterior films showed good
alignment with normal articular surfaces and spacing, but he

4

observed a marked compression fracture of the L1 vertebrae to about half its height with a concomitant kyphosis above that. [*Id.*] He further observed the fracture to be wedged with a small area anterior, as well as some widening of the S1 with some listhesis. [*Id.*]

Nonetheless, upon examination, Dr. Owen found that Plaintiff had a negative straight leg raising test in both the lying and sitting positions, normal grip strength, an ability to heel and toe walk, an ability to tandem walk, full range of motion of the right shoulder, no motor sensory or reflex abnormality, and no radiculopathy. [*Id.*] He also noted Plaintiff's markedly blunt affect and "slightly loose associations with mild tangentiality." [AR at 150-52.]

Dr. Owen's assessed Plaintiff with:

> (1)   Status post compression fracture of L1 with persistent back pain radiating up into that area.   He also has pain radiating down his right leg and I suspect that is from the L5 area.   There appears to be an old injury there, I suspect facet injury there with mild listhesis; (2)   Either depression or significantly blunted affect or personality; (3) Right shoulder pain with no significant range of motion difficulties.

[AR at 152.] He concluded that, "[i]n my opinion, in terms of his ability to do work-related activities I think he would have moderate to severe difficulty lifting, handling and carrying objects," although he concluded that Plaintiff's hearing, seeing, speaking, and traveling were minimally affected by his condition.

5

[AR at 153.]

A non-examining agency consulting physician, Dr. Gregg Timothy, assessed Plaintiff as able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and unlimited in his ability to push and/or pull (including the operation of hand and/or foot controls). [AR at 155.]  Dr. Timothy remarked that there was no evidence in the treating source record of chronic complaints or assessments of physical limitations.  [AR at 156.]

As to postural limitations, Dr. Timothy assessed Plaintiff as being able to climb a ramp/stairs frequently, but a ladder, rope, or scaffolds only occasionally.   According to Dr. Timothy, Plaintiff can balance frequently and stoop, kneel, crouch, and crawl frequently.  [AR at 156.]  He noted no established manipulative, visual, communicative, or environmental limitations. [AR at 157-58.]

Although Dr. Timothy noted that Plaintiff claimed to have a great deal of pain in his lower back and, specifically, trouble putting on his shoes, he found "no specific work-related physical limitations alleged in [the] application materials." [AR at 159.] He acknowledged that the examining source's conclusions about the claimant's limitations or restrictions differed significantly from his own.   [AR at 160.]   In assessing why he felt Dr. Owen's

6

conclusions were not supported by the evidence in the record, Dr. Timothy wrote that Dr. Owen's assessment that Plaintiff "would have moderate to severe difficulty lifting, handling, and carrying objects" was partially supported by the evidence of record but that the medical evidence contained contradictions because:

> There [was] no evidence in the file of any limitation in manipulative activity as defined by the Social Security Administration.  Some mild limitations are indicated in lifting and carrying due to chronic backache with old lumbar compression fracture and kyphosis.

[*Id.*]

Dr. Sprague, the agency consulting psychologist, administered a battery of psychological tests including the Weshler Adult Intelligence Scale (WAIS), Wide Range Achievement Test, Beck Depression Inventory, and the Rey 15-Item Memory Test.  [AR at 163.]  The Wide Range achievement tests demonstrate that Plaintiff reads at the second grade level, spells at a first grade level, and performs at the fifth grade level in arithmetic.  [AR at 167.]  The WAIS-III revealed a verbal IQ of 73, a performance IQ of 63, and a full-scale IQ of 66.  [AR at 166.]

Based on the testing results, Dr. Sprague diagnosed Plaintiff with a depressive disorder, NOS, and anxiety symptoms with no diagnosis rendered; a pain disorder associated with general medical condition; and mild mental retardation.  [AR at 168.]  Dr. Sprague opined that there were moderate impairments in the claimants ability to deal with the stressors of everyday living compared to

7

an average person; in his ability to deal with unexpected changes;
in his ability to work a simple 8-hours a day, five days a week
without interruption from psychologically or intellectually based
symptoms, and in his ability to initiate and maintain tasks. [AR
at 169.]   Dr. Sprague also found that Plaintiff's ability to
sustain concentration and attention would be moderately-to-
significantly impaired. [*Id.*]

The ALJ made the following findings of fact and conclusions of
law in determining that Plaintiff was not entitled to disability
benefits:

> 1.   The claimant meets the insured status requirements
> of the Social Security Act through at least the date of
> this opinion.
>
> 2.   The claimant has not engaged in substantial gainful
> activity at any time relevant to this decision (20 CFR
> 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et
> seq.*).
>
> 3.   The claimant has the following severe impairments:
> status-post compression fracture of the lumbar spine;
> right shoulder pain; and depression/anxiety (20 CFR
> 404.1520(c) and 416.920(c)).
>
> 4.   The claimant does not have an impairment or
> combination of impairments that meets or medically equals
> one of the listed impairments in 20 CFR 404, Subpart P,
> Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
> 416.920(d), 416.925 and 416.926).
>
> 5.   After careful consideration of the entire record,
> the undersigned finds that the claimant has the residual
> functional capacity to perform medium exertional work
> involving occasional climbing of ladders/ropes/scaffolds,
> and occasional balancing.  He is able to understand,
> remember and carry out simple, repetitive
> tasks/instructions; relate adequately in an object
> focused setting; and adapt to routine task demands.

8

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1564 and 416.965).

7.   The claimant was born on July 19, 1946 and is 59 years old, which is defined as advanced age (20 CFR 404.1563 and 416.963).

8.   The claimant has a limited education but is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   While the claimant has semi-skilled work experience, he has no transferable skills (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 415.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from March 15, 2004 through the date of this decision(20 CFR § 404.1520(g) and 416.920(g)).

[AR at 21-24.]

IV.  **ANALYSIS**

Plaintiff alleges that the ALJ's finding as to his residual functional capacity is not supported by substantial evidence of record because the ALJ erroneously failed to accord sufficient weight to the opinion of the Administration's own consultative examiner, Dr. James Owen.  Plaintiff further alleges that the ALJ failed to accord sufficient weight to the opinion of the Administration's own consultative psychologist, Dr. Dennis Sprague, or to even consider the effect of the Plaintiff's demonstrated mental limitations in assessing Plaintiff's RFC.

9

In considering a disability claim, not all doctor's opinions are considered equally.  An ALJ should afford different weights to the opinions of physicians, examining and consulting, during his or her review of a claim:

> When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. [20 C.F.R.] § 404.1527(d)(1). The SSA will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)...." *Id.* § 404.1527(d)(2). The SSA promises claimants that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id.*

*Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *accord Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-46 (6th Cir. 2004).

In determining a claimant's RFC:

> . . . [u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 CFR §§ 404.1527(f)(2), (f)(2)(I).

In this matter, the ALJ concluded that Dr. Owen's opinion,

10

that Plaintiff would have moderate to severe difficulty lifting, handling, and carrying objects, was not supported by the physician's own medical findings. [AR at 23, 153.]  In support of this conclusion, the ALJ noted that Dr. Owen found a negative straight leg raising test in both the lying and sitting positions; normal grip strength; an ability to heel and toe walk; an ability to tandem walk; full range of motion of the right shoulder; no motor, sensory, or reflex abnormality; and no radiculopathy.  [AR at 23, 151-52.]  Dr. Owen also noted that the x-rays of Plaintiff's lumbar spine showed good alignment with normal articular surfaces and spacing. [AR at 23, 152].

Plaintiff complains that the ALJ, however, erred in failing to note that Dr. Owen also observed that Plaintiff had experienced a marked compression fracture of the L1 vertebrae to about half its height with a concomitant kyphosis above that and that the fracture was wedged with a small area anterior, as well as some widening of the S1 with some listhesis.  Although the ALJ did not include this observation in his synopsis of Dr. Owen's findings, it cannot be said that the ALJ ignored this assessment as he did note that Plaintiff "sustained a fracture at L1 in 1965, but never had surgery or interventional treatment, and he engaged in substantial gainful activity until 2004."  Rather than ignoring the evidence, the ALJ engaged it, and was unable to rationalize Plaintiff's complaint of extreme back pain ("At a consultative examination, he

complained of back pain at a level 10."), which was apparently the result of the L1 fracture, with Dr. Owen's other observations and the following facts:

- Claimant took "only over-the-counter Tylenol for treatment,"
- Claimant he had worked for many years with the injury,
- No treating source had placed limitations on Plaintiff,
- Claimant had not reported back problems to a treating physician or sought medical treatment for his pain over the course of the years represented by the records in the administrative record, and
- while Claimant testified of problems with sitting as a result of his back pain, Plaintiff was observed to have remained seated without moving throughout the hearing.

[AR at 22-23, 120-149, 244, 248.]   In other words, the ALJ adequately explained in his decision why he declined to give controlling weight to the opinion of the examining agency medical consultant as to the limitations assessed by Dr. Owen. 20 CFR §§ 404.1527(f)(2), (f)(2)(I).   Further, contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's L1 fracture in his analysis.   Ultimately, this Court concludes that the ALJ did not err in determining Plaintiff's RFC and that substantial evidence of record supports the ALJ's determination that claimant had a RFC to perform medium work.

12

Willoughby next argues that the ALJ erred in crafting an RFC which did not take into consideration the effect of Plaintiff's demonstrated mental limitations.[2]  Specifically, Plaintiff argues that the depressive disorder, NOS, anxiety symptoms, pain disorder, and mild mental retardation diagnosed by Dr. Sprague, moderately impair his ability to deal with the stressors of everyday living compared to an average person; his ability to deal with unexpected changes; his ability to work a simple 8-hours a day, five days a week without interruption from psychological or intellectually based symptoms; and moderately to significantly impair his ability to sustain concentration and attention. [AR at 169.]

In formulating Claimant's RFC, the ALJ specifically relied on Dr. Sprague's findings.[3]  [AR at 22.]  Indeed, consistent with Sprague's findings, the ALJ instructed the VE to assume that Claimant retained the capacity "to understand, remember and carry out simple repetitive tasks and instructions, and was able to relate adequately . . . in an object focused setting and able to adapt to routine tasks [and] demands." [AR at 253; *see also* AR at

---

[2]The Court understands from Plaintiff's brief that he does not challenge the ALJ's conclusion that he did not meet the criteria of 12.05C, which would have required evidence that he had experienced deficits in adaptive functioning initially manifested before age 22.

[3]Further, to the extent that the ALJ relied, in part on the Functional Capacity Assessment completed by non-examining agency consultant, M. Thompson Prout, Ph.D., in crafting this RFC, the Court notes that Dr. Prout gave great weight to the opinion of the consulting examiner, Dr. Sprague. [AR at 187.]

22-23.] This is contrary to Claimant's assertion that the ALJ rejected the findings and restrictions noted in Dr. Sprague's report out-of-hand. The Court is not persuaded that the ALJ erred and finds that substantial evidence of record supports the ALJ's specification of Plaintiff's limitations in the RFC.

V.    **CONCLUSION**

    For the foregoing reasons, **IT IS ORDERED:**

    (1)  That the Commissioner's motion for summary judgment [Record No. 13] be, and the same hereby is, **GRANTED;** and

    (2)  That Plaintiff's motion for summary judgment [Record No. 12] be, and the same hereby is, **DENIED.**

    This the 25th day of March, 2009.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

14